HELEN MAHAR, plaintiff in error, *v.* JAMES O'HARA, defendant in error.

*Error to Randolph.*

The several Circuit Courts of this State in their respective Circuits have the same jurisdiction in Chancery which the Court of Chancery in England has, except where its jurisdiction is limited by express statute, or by necessary implication; as where some other Court may be vested with exclusive jurisdiction of the particular matter. The same practice prevails as in the English Courts, except where the statute has made particular provision.

Courts of Equity regard a devisee, who takes a devise, chargeable with legacies or debts, as a trustee, and will enforce the execution of the trust reposed.

The word "action" used in the proviso in the 131st section of the Statute of Wills has reference to the action of account to enforce the payment of a legacy.

The rule that nothing is to be presumed in favor of a pleading is applicable to an answer in Chancery.

A devisee, by taking an estate devised to him by a will, assumes the payment of legacies imposed upon him by the terms of the will.

BILL IN CHANCERY, &c. filed in the Randolph Circuit Court, by the plaintiff in error against the defendant in error, and heard upon bill, answer, replication and testimony taken in the case, at the April term 1843, before the Hon. James Semple, when the bill was dismissed with costs.

The material portions of the bill are substantially stated by the Court.

*D. J. Baker*, for the plaintiff in error.

1. A Court of Chancery has jurisdiction of this case, and can afford to complainant the relief sought. 1 Story's Eq. Jur. 553, §§ 589, 591, 593, *et seq.;* 1 Jarman on Wills, 755; 2 Williams on Ex'rs. 1372–3, 1437.

2. By the terms of the devises and bequests made to the defendant, he was bound, upon acceptance of the same, to pay the annuity of corn, wheat and pork specified to the complainant, when she ceased to live with him. It is part of the grant under which she claims, that he shall make the yearly payment to her upon the happening of the contingency provided for. It is clearly the intention of the testator to secure a support to the complainant during her life, out of the property granted by him to the defendant. 2 Jarman on Wills, 525, 6, 7, 534; 1 U. S. Dig. 91, § 372; 2 Barb. & Har. Dig. 151, § 13; Hammond's Dig, 693, xiv. § 1; Ib. 694, xiv. §§ 19, 20, 24; 3 Mylne & Keene's Ch. R. 252, in 9 Eng. Ch. R. 22; also, *Glen* v. *Fisher*, 6 Johns. Ch. R. 33, 37; 1 Paige, 32; *Messenger* v. *Andrews*, 4 Eng. Ch. R. 479.

3. The defendant's acceptance of the benefits secured to him in the will of Henry O'Hara, deceased, made him a trustee to the complainant, and bound him to pay to her the annuity based on and growing out of the grants to him. See cases and authorities referred to above.

4. No condition was attached to the right of the complainant to have the annuity provided for her, except that only of living separate from the defendant. The intention of the testator would be defeated by a construction which shall attach to this right any other condition or contingency.

5. A demand by the complainant of this annuity is perhaps not necessary in this case. The defendant repeatedly declared he would *not* pay; but a demand is proved by testimony and in fact admitted by the defendant in his answer. 2 Barb. & Har. Dig. 175, § 8; *Glen* v. *Fisher*, 6 Johns. Ch. R. 33, 37.

*L. Trumbull*, for the defendant in error.

The Opinion of the Court was delivered by

CATON, J.*  On the 20th of July, 1840, Helen Mahar filed her bill in the Randolph Circuit Court to enforce the payment of a contingent legacy secured to her by the last will and testament of Henry O'Hara, against James O'Hara, executor and residuary legatee of the said Henry O'Hara. The bill states that before and at the time of the death of the said Henry O'Hara, she was his wife, and that on the 20th of June, 1826, he made and published his last will and testament in due form of law, whereby among other things he gave to his son James, the present defendant, his homestead, except certain specified portions which he gave to other devisees; and after making various other bequests and devises, the testator declared it to be his desire, that those of his children who then resided with him should continue to reside on the plantation after his death, with his son James, and that his wife Helen, the present complainant, should continue to reside there and act as a mother to his children and to her own, and that they should reside there together so long as they could agree; but in case the complainant should desire to reside by herself, James should build her a comfortable dwelling house convenient to to a good spring of water, and should deliver to her one hundred bushels of corn, twenty bushels of wheat and five hundred pounds of pork, annually.  By the will, also, there were a considerable number of specific bequests made to the complainant, although of no great value.  The bill then declares that inasmuch as he had given the principal part of his estate, and requested him to make the several payments as before expressed, to the other legatees and to the complainant, he appoints him, the said James, his executor.

The bill then avers, that soon after the death of the testator, to wit: on the 3d of July, 1826, James O'Hara proved the will, and took upon himself the execution thereof,

*WILSON, C. J. did not sit in this case.  KOERNER, J. was counsel in the Court below.

and possessed himself of all the real and personal estate of which the said testator died seized, and possessed and accepted the real estate and personal property, which by the said will were devised and bequeathed to him. The defendant delivered to her all of the specific property bequeathed to her in the will, and built the house as directed in the will for her, and delivered to her the provisions as specified in the will till the year 1830, since which time he has refused to pay the said annuity, although she has ever since lived separate from the said James; that the said defendant has, ever since the death of the said testator, received, accepted and enjoyed the real and personal estate bequeathed and devised to him, of the value of $5000.

The defendant in his answer admits all of the material allegations of the bill, except that he denies that real and personal estate which he received himself by the will, was worth $5000. He admits that he had refused to pay the annuity for the time mentioned in the bill, for the reason that she had ceased to live in, and occupy, the house which he had built for her on his premises, but had married a man of the name of Mahar and removed to the State of Missouri.

A replication was filed and proofs taken, and the cause was heard by the Court below, and the bill dismissed with costs, in April 1843, which decree we are asked to reverse, and to render a decree in favor of the complainant according to the prayer of the bill.

As the jurisdiction of a Court of Equity is questioned, that will be first considered. The several Circuit Courts of this State in their respective circuits, have the same jurisdiction in Chancery which the Court of Chancery in England has, except where its jurisdiction is limited by express statute, or by necessary implication, as where some other Court may be vested with exclusive jurisdiction of the particular matter. Our Courts are vested with the same powers, and are governed by the same practice; or agreeably to such rules as may be established by said Courts, except where particular provision is made by our statute.

Without stopping to inquire into the general jurisdiction

Mahar *v.* O'Hara.

of Courts of Equity over the administration of estates, either exclusively, or concurrently with the Ecclesiastical Courts in England, or in this country the Probate Courts, it is sufficient to observe, that the jurisdiction of the Courts of Equity in cases of legacies, has been firmly established, and beyond controversy, at least since the time of Lord Nottingham. The grounds of that jurisdiction are various, and most satisfactory.   1 Story's Eq. Jur., Chap. 10.   In Equity, executors and administrators are trustees, and so also is a devisee who takes a devise, chargeable with legacies or debts. No better illustration could be desired, than the case before us.   Here the testator devised an estate to his son, who also he made his executor, and in consideration of the devise, he imposed upon his son the burthen of supporting the widow of the testator in his family, so long as they could agree, or she should choose to reside there, and when she should choose to live by herself, he should build for her a house, and furnish her annually with a specified quantity of corn, wheat and pork.   Now, in Equity he is considered a trustee for the purpose of executing these provisions in favor of the widow, and by accepting the estate he assumed the trust, and the estate thus devised is not only chargeable in Equity with the trust, but by accepting the devise he became personally responsible for the payment of the legacy, according to the provisions of the will.   Indeed, without the aid of the searching powers of a Court of Equity, estates might never be fairly settled, frauds would go undetected, and legacies but too frequently would remain unsatisfied, and the intention of testators would be defeated.   But so far from the jurisdiction of the Courts of Equity in cases of legacies being taken away by our statute, it is expressly confirmed.   The 131st section of our Statute of Wills, among other things, provides: "And every executor, being a residuary legatee, may have an action of account, or suit in Equity against his co-executor, or co-executors, and recover his part of the estate in his or their hands; and any other legatee may have the like remedy against the executors; *provided,* that before any action should be commenced for the legacies as afore-

said, the Court of Probate shall make an order directing them to be paid." Now nothing more need be said on this subject of jurisdiction, except perhaps to give a proper construction to the proviso in the last clause of the section, as some might suppose that the legislature had made so absurd a law as to tie up the hands of the Courts of Equity, as well as all other Courts, in all cases of legacies, no matter how complicated, extraordinary or difficult the case might be, whether involving a construction of the will or not, till the Court of Probate had made an order for the payment of the legacy, thus making the Court of Chancery a mere instrument in the hands of the Probate Court, to carry into effect its orders and judgment. Such a construction should not be adopted, unless the language of the law will admit of no other. In this case, however, we think we may safely say, that the legislature meant no such thing. In the preceding part of the section, two modes are prescribed for enforcing the payment of the legacies, one by action of account and the other by suit in Equity; and the proviso declares that before any action shall be commenced for legacies as aforesaid, an order shall be made by the Probate Court, &c. This clearly applies only to cases where the action of account shall be commenced, for the term *action,* is never properly applied to a suit in Equity, nor is *suit* a proper designation for an action of account. The proviso, therefore, does not apply to a suit in Equity to enforce the payment of a legacy.

It is next objected that the husband of the complainant should have joined her in the bill. The objection would have been fatal beyond all doubt, if the answer had only shown that she had a husband living. Apparently, not with a view of showing a want of proper parties, but for the purpose of presenting an excuse for not paying the annuity, the answer states that the complainant was married to one Mahar in 1831 or 1832, but it does not state that he is still living. If he had been, we are not to presume that the answer would have omitted to state it. Like any other pleading, nothing is to be presumed in favor of the answer.

By the same rule, had the bill shown the marriage to Mahar, it would probably have been necessary to have went on and shown a sufficient reason for not making him a party.

We will next inquire into the proper construction of this will, or that portion of it which is relied upon as the foundation of this suit. I have before shown, that by taking the estate devised to him, he assumed to pay the legacies imposed upon him by the will. *Messenger* v. *Andrews,* 4 Eng. Ch. R. 479. It is, therefore, only necessary to inquire what the complainant is entitled to under the will.

It is insisted upon by the counsel for the complainant, that he was only bound to provide her with a house, and furnish her with the provisions during the time that she resided by herself, in the house built for her, and not after her marriage to Mahar. This is the clause relied upon: "But in case my wife shall choose to separate from them, (James and the other children,) and desire a residence to herself, I direct that my son James shall build her a comfortable dwelling house, on his part of the land above given him, convenient to a good spring of water, and to deliver to her one hundred bushels of corn, and twenty bushels of wheat, and five hundred pounds weight of good pork annually." To say that the testator intended that she should have the provisions no longer than she lived in the house by herself, is almost as unreasonable as to say that she was not intended to have the house any longer than she should eat all the provisions herself. It cannot be presumed that he intended to compel her to reside in that house, whether it suited her convenience or not. By residing to herself, is only meant a residence away from the family of the defendant. A refusal to enjoy one portion of the provision did not deprive her of her right to the other; nor can we reasonably infer that the testator intended to prohibit her marrying, should she desire to do so, by limiting this bounty to her during her widowhood. The law is averse to any provision in a will or other instrument in restraint of marriage, as being against the interest of the State, and it will not attribute any such intention to the testator, unless his language will bear no other reasonable construction. If

a testator design to exercise a control over the acts and happiness of those who shall live after him, not for their own good, but from mere caprice, or from an apprehension that he may be forgotten, he must at least manifest such an intention clearly, or else we cannot attribute to him such a design. While it may be admitted that a testator may impose reasonable restraints upon his legacies, against improvident marriages, yet there are many cases which show that an absolute prohibition of marriage will be disregarded, either in a bequest or a gift; and such may be the law as a general rule, yet it is said, and I think with truth, that an annuity to a widow during widowhood, is not void by the Common Law, although it generally was by the Civil Law; (1 Story's Eq. Jur., § 285, note 4;) but such conditions are held to great rigor and strictness. *Long* v. *Dennis*, 4 Burr. 2055; *Parsons* v. *Winslow*, 6 Mass. 169. However, as this question in its full extent does not necessarily arise in the decision of this case, I shall refrain from a review of the authorities on the subject, or from attempting to point out the mere distinctions which will be found to prevail on this subject. Enough has been said to show, that by no legal or reasonable construction, does this will provide that this annuity was limited to her during her widowhood; and this legacy was far from being a gratuity to the complainant, and at the expense of the defendant, for by accepting it, she has lost her right of dower, which, if we may judge from what appears in the record, would have been of vastly greater value than this pittance of about $60 a year, and the use of a house; and this loss of dower has been a direct gain to the defendant, who took the lands discharged of it, so that he has received directly from her much more than an ample consideration for all that she claims of him; and it does seem to me, that it is most ungracious in him to refuse to pay this small annuity, yet it is his right, if he thinks he has a legal defence, to make it, yet certainly he ought not to expect a very strained construction in his favor.

What has been already decided substantially determines this case without looking particularly into the depositions, for

although the defendant denies that the estate which he received by the will was worth $5000, as charged in the bill, yet he has not stated how much less it was worth. The proof, however, is that it was worth at least $3000; but I apprehend that this makes but very little difference. Some question was also made on the argument as to the sufficiency of the demand made of the defendant for the annuity, yet the demand is not only sufficiently established by the proof, but the defendant, in his answer, admits that he has refused to pay it ever since her removal from the house which he built for her, and since the time charged in the bill.

The case made by this bill vests the Court with a right, not only to declare the right of the complainant to an annuity for life, but to secure and enforce its payment, as well for the future as for the past, which may be well done here under the general prayer, and in this case most particularly should it be done, to avoid the expense and vexation of an annual suit to recover the annuity as it may fall due. The decree of the Circuit Court must be reversed and the cause remanded, with directions to that Court to enter a decree declaring the complainant to be entitled to the use of the dwelling house mentioned in the pleadings, which was built for her by the defendant, during her natural life; also, that she is entitled to recover of the defendant the value of the said annuity of corn, wheat and pork, from and including the year 1831, till the time of filing this bill; also, that she is entitled to recover, in like manner, the said annuity from the said defendant from the time of the commencement of the said suit up to the time of rendering said decree, in case it shall be found that the said defendant has refused to pay said annuity in kind, according to the directions of said will; and if there has been no such refusal, then she is entitled to receive the amount of said annuity in kind, during the time aforesaid of the said defendant; also, that she is entitled to receive from the said defendant, the said annuity in kind of the said defendant during her natural life; and that the Circuit Court have an account taken, to ascertain the amount due the complainant up to the time of rendering said decree,

either in money or in kind, and that it enforce the payment thereof, either by execution or attachment as the case may require; and also that the Circuit Court enforce the payment of the said annuity by the said defendant, from time to time as it may fall due, either by attachment or otherwise, as the case may require, upon proper application, made by the said complainant under that decree, and that the defendant pay the costs. As it was stated upon the argument by the complainant's counsel, that the defendant is one amply responsible, the decree need not make the said annuity a lien upon the land devised to the said defendant in and by said will, unless it shall be found to be necessary by a subsequent application to be made to the Circuit Court.

The decree of the Circuit Court is reversed with costs, and the cause remanded with directions for further proceedings according to this Opinion.

*Decree reversed.*