Nettie F. McKeage, Appellant, v. Eliza B. Coleman et al., Appellees.

Gen. No. 9,178.

Opinion filed March 10, 1938.

Joel C. Carlson, of Chicago, and Harry C. Hanson, of Geneva, for appellant.

Frank A. McCarthy, George Gillette and Norbert B. Tyrrell, all of Chicago, for appellee William J. Hoffmann.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

Sumner Coleman, a resident of Kane county, Illinois, died testate on May 9, 1882. His last will and testament was duly proven and admitted to probate on May 25, 1882. He left him surviving his wife Marrietta N. Coleman and nine children, among them being James Coleman and Fred W. Coleman, his sons, and the plaintiff Nettie F. McKeage, a daughter. Marrietta N. Coleman, the widow, died intestate on August 28, 1912, and James Coleman, the youngest child of the testator, attained the age of his legal majority in 1889. The original complaint in this cause was filed on February 23, 1934, and a year later an amendment thereto was filed. In addition to alleging the foregoing facts, the said complaint as amended described the land of which Sumner Coleman died siezed and averred that Fred W. Coleman failed, neglected and refused to pay the plaintiff the legacies as directed in said will and charged that on July 17, 1929, the said Fred W. Coleman attempted to convey, by warranty deed, the land so devised to him by his father, to the defendant, Wm. J. Hoffman. The complaint as amended prayed that the bequests to the plaintiff be declared a charge and a lien upon the real estate mentioned in the testator's will, and that unless said bequests, together with interest thereon from the date when the same were to be paid, be paid by the defendants within such time as the court may determine, that then said real estate be sold to pay the same.

A copy of the last will of Sumner Coleman was attached to the complaint as amended and by its provisions the testator nominated his wife as sole executrix and gave to his son, the said Fred W. Coleman, the livestock on his farm and bequeathed and devised to his wife Marrietta N. Coleman a life estate in the rest of his personal property and in the real estate involved herein. His will then provided: ''After the death of

my wife and my youngest child becoming of age, my son Fred W. Coleman is to have all my real estate. By paying the following legacies, to-wit: To my children Mary H. Cree, $1,000.00 one year after, $1,060.00 to Charles J. Coleman; $60.00 to George S. Coleman, Fred W. Coleman, Nettie F. McKeage, Eliza B. Coleman, Frank A. Coleman, James Coleman and Sumner N. Coleman. Two years after $1,060.00 to George S. Coleman, $60.00 to Sumner N. Coleman, Nettie F. McKeage, Eliza B. Coleman, Frank A. Coleman and James Coleman. Three years after $1,060.00 to Sumner N. Coleman, $60.00 to Nettie F. McKeage, Eliza B. Coleman, Frank A. Coleman and James Coleman. Four years after $1,060.00 to Nettie F. McKeage, $60.00 to Eliza B. Coleman, Frank A. Coleman and James Coleman. Five years after $1,060.00 to Eliza B. Coleman, $60.00 to Frank A. Coleman and James Coleman. Six years after $1,060.00 to Frank A. Coleman, $60.00 to James Coleman. Seventh year $1,060.00 to James Coleman. The within legacies are to be paid to my children or their heirs.'' The chancellor sustained a motion to dismiss the complaint as amended and rendered a decree finding that by the acceptance of the devise of the farm described in the complaint as amended the son of the testator Fred W. Coleman became vested with the fee simple title thereto, that he became personally liable to pay the plaintiff and the other children of the deceased, the several amounts mentioned in the will, that it appears from the complaint as amended that more than 10 years had elapsed since the last of said payments became due and payable and that therefore the relief sought was barred by the statute of limitations. The decree dismissed the complaint as amended for want of equity and from that decree plaintiff has prosecuted this appeal.

Counsel for appellant insist that under the averments of the complaint as amended, appellant, under

the provisions of the will of Sumner Coleman, is a legatee, that her legacy was made a charge and lien upon the real estate devised to her brother Fred. That his acceptance of said devise created not only a personal liability against him in favor of appellant for the amount bequeathed to her, but that by virtue of the provisions of said will, the relationship of trustee and *cestui que trust* arose and that her right to have the real estate sold to discharge her lien is not barred either by the statute of limitations or by laches. Counsel for appellant state that the only error relied upon by them for the reversal of this decree is the holding of the chancellor that the bequest to the plaintiff and her right to foreclose the same as a charge or lien against the real estate devised by Sumner Coleman to Fred W. Coleman, is barred by the statute of limitations.

Counsel for appellee concede that appellant, by the provisions of her father's will, is a legatee and that the payment to her of the several amounts therein provided was made a charge and lien upon the real estate of the testator, which he devised to his son Fred. That the payment thereof became a personal liability of Fred W. Coleman by his acceptance of the testator's devise of the land to him. That appellant also had an equitable lien upon said real estate but such equitable lien has been lost to her by laches. Counsel for appellee deny that any trust was created by said will but insist that if a trust was created, it is a trust arising by implication of law and not an express trust and contend that appellant's rights are analogous to those of a mortgagee, that the same limitations should apply and that this proceeding is barred by laches or by the statute of limitations.

In *Albretch v. Wolf,* 58 Ill. 186, cited and relied upon by appellant, it appeared that Frank Bauer and George Hoehn were partners in business. Hoehn died testate naming G. A. Wolf as his executor. Hoehn's will was

duly admitted to probate in April, 1860 and letters testamentary were thereupon issued to Wolf. His will provided that if Bauer would deliver to Wolf for the benefit of testator's daughter all notes which the firm held, amounting to $570, and further pay all the just debts of Hoehn, that then Bauer should have all the remainder of testator's property, real and personal. After the death of Hoehn, the terms of his will were accepted by Bauer and he delivered the notes to Wolf, the executor, and received from the executor the other property belonging to his deceased partner, but Bauer failed to pay the debts regularly proven against the estate and Wolf subsequently paid them as executor. In March, 1868, Bauer died and shortly thereafter Wolf, the executor, died. In June, 1869, the administratrix of the estate of Wolf filed a claim against the estate of Bauer. The administrator of Bauer's estate insisted that Bauer took the property in the character of purchaser with an agreement upon his part to pay the debts of Hoehn and as no action was begun by Wolf or his representative within five years after the action accrued, it was barred by the statute of limitations. The court rejected this contention and held that Bauer took the property under the will of Hoehn and was charged with the payment of his debts. The court further held that a direct trust was created by the express terms of the Hoehn will and that the relation of trustee and *cestui que trust* existed and the statute of limitations was therefore not available either to the trustee or to his estate.

*Mahar v. O'Hara,* 9 Ill. 424, also cited by appellant was a suit instituted by a widow to enforce the payment of a contingent legacy secured to her by the last will of her deceased husband. It appeared that by said will the testator devised his homestead to his son James, expressing his desire that his wife and children should continue to reside thereon with his son James

so long as they could agree, that in the event the widow should desire to reside by herself, James should build her a comfortable dwelling and deliver to her 100 bushels of corn, 20 bushels of wheat and 500 pounds of pork annually. The bill was filed on July 20, 1840, and upon the hearing it appeared that the defendant James, who was appointed executor of his father's will, accepted the real estate which had been devised to him and built the dwelling and delivered to his mother the provisions specified in the will until 1830, when he refused so to do for the reason that his mother had ceased to live in the house which he had built for her but had remarried and moved to Missouri. In reversing the decree of the circuit court which had dismissed the bill for want of equity, the court in its opinion said: "In equity, executors and administrators are trustees, and so also is a devisee who takes a devise, chargeable with legacies or debts. No better illustration could be desired, than the case before us. Here the testator devised an estate to his son, who also he made his executor and in consideration of the devise, he imposed upon his son the burden of supporting the widow of the testator in his family, so long as they could agree, or she should choose to reside there, and when she should choose to live by herself, he should build for her a house, and furnish her annually with a specified quantity of corn, wheat and pork. Now in equity he is considered a trustee for the purpose of executing these provisions in favor of the widow, and by accepting the estate he assumed the trust, and the estate thus devised is not only chargeable in equity with the trust, but by accepting the devise he became personally responsible for the payment of the legacy according to the provisions of the will."

The *Albretch* case, *supra,* held that a direct, express trust was created by the terms of the Hoehn will, that Bauer took the property charged with the payments of

Hoehn's debts and for that purpose held the property he received from Hoehn's estate in trust, that the relationship of trustee and *cestui que trust* therefore existed and that so long as the duties of the trustee remained undischarged, the trustee could not avail himself of the provisions of the statute of limitations. Counsel for appellee concede that this holding is adverse to their contention but insists that the authorities cited by the court in *Albretch v. Wolf* do not support the conclusion reached by the court. It is true that the court cites with approval and quotes from *Kane v. Bloodgood,* 7 Johns Ch. 90, 11 Am. Dec. 417. It was held in that case that the suit, which was a bill brought by a legatee to enforce the payment of a legacy, was barred because the legatee did not bring suit within the period of limitations applicable under a statute of New York which gave a legal remedy for the recovery of the legacy. Applying the holding in *Kane v. Bloodgood* to the facts as shown in the *Albretch* case, the statute of limitations should have been held to be available to the administrator of Bauer's estate because the legal remedy which was being asserted by the administratrix of Wolf's estate had existed all the time. In *Mahar v. O'Hara, supra,* the devisee was executor of the will and no question of the application of the statute of limitations was involved.

*Merton v. O'Brien,* 117 Wis. 437, 94 N. W. 340, was a proceeding similar to the instant case. There as here, it was insisted that the plaintiff's claim was an express trust created by a devise of real estate which was charged with the payment of money. In holding that it was not an express trust, the court said: "If this claim is to be sustained, certainly we shall have to materially enlarge our conceptions of express trusts in real property. It is to be remembered that the defendant O'Brien was never the executor of his father's will, as the defendant was in the case of *Powers v. Powers,*

*supra,* and hence that the trust relationship existing between executor and legatee never arose. He was simply a devisee of real estate, upon which was imposed a money charge or lien in favor of a third person. He was not required by the will either to sell the real estate and pay the charge out of the proceeds, or to use it in any particular manner for the benefit of the legatee, or to use it in any manner . . . if he did not choose to. It was his own property, subject simply to the payment of the charge. By accepting the devise, and taking possession thereof under the devise, he doubtless became personally liable to pay the charge thereon when it became payable by law. *Evans v. Foster,* 80 Wis. 509, 50 N. W. 410, 14 L. R. A. 117. His situation, then, was that he owned real property, subject to a lien thereon, which he had agreed to pay, and which might be foreclosed and enforced at any time after it fell due, which, under any theory of the facts stated, was more than 20 years before the commencement of this action. Section 3850, Rev. St. 1878. If, under these circumstances, he is to be held the trustee of an express trust, under the terms of subdivision 5 of the section quoted, then it is difficult to see why every mortgagor of lands is not also the trustee of an express trust, under said subdivision, or why every owner of lands which are subject to a lien, whether for purchase money or building materials or unpaid taxes, is not such trustee. This conclusion seems unavoidable if the premise be granted, and it becomes, perhaps, the strongest argument against the correctness of the premise. It is not meant that, in case a man owns and occupies property subject to a mortgage or charge, there may not be some characteristics which may properly be called 'trust characteristics' in his holding. His holding is fiduciary, to the extent that he may not destroy the property or commit waste to the prejudice of the mortgagee or owner of the charge; and so he may properly enough

be called a trustee, in a general sense, as that term is frequently used to cover fiduciary relations of many kinds which do not rise to the dignity of express trusts.''

One of the cases cited and relied upon by counsel for appellant is *Williams v. Williams,* 82 Wis. 393, 52 N. W. 429, but that case was expressly overruled by *Merton v. O'Brien, supra.* In referring to the *Williams* case the court in *Merton v. O'Brien, supra,* said: ''The widow in that case, who was the executrix, and hence a trustee for the legatee, had possession of the land as life tenant up to December, 1884; and it appears that the estate was then unsettled, and that one of the remaindermen became administrator in her place. Thus it might, perhaps, be said with truth that the property was in the hands of trustees of express trusts up to within a short time before the intervention took place, and hence that upon this ground the decision in that case was right. It must be admitted, however, that the decision was put squarely upon grounds which would sustain the ruling in the present case. In view of our recent rulings on the subject to the application of the statute of limitations in cases of trust as contained in *Boyd v. Fire Ass'n* and *Buttles v. De Baun, supra,* which rulings were made after mature consideration of the subject, we do not feel that we can follow the reasoning of the Williams case; and so far as it indicates that a mere devisee of land, subject to the payment of a legacy charged thereon, is a trustee of the legatee, of such a nature that the statute of limitations will not run in his favor, it must be considered as overruled.'' *Nolan v. Donahoe,* 161 Wis. 437, 94 N. W. 340, reaffirms the holding in *Merton v. O'Brien, supra.*

In *Shuld v. Wilson,* 225 Ill. 336, it appeared that the testator died in the State of California leaving real estate in Illinois and California. By his will certain pecuniary legacies were provided and the testator then

directed that the residue of his estate, after paying all expenses, be divided between certain residuary legatees. The law of California provides for the payment of interest upon legacies and while it appeared that the principal amount of the legacies had been paid, still, under the California law there was a large sum due as interest and to subject certain of testator's real estate to the payment of this interest this bill was filed. The residuary legatees in their answer interposed as a defense the California statute of limitations and laches. There was no proof in the record as to the California law in regard to the statute of limitations and in affirming the decree which dismissed the bill, the court said: "If, however, it appears from the will that it was the intention of the testator to make the pecuniary legacies a charge on the real estate, then the real estate must be resorted to to make up any deficiency in the payment of the legacies from the personal estate. But, independently of whether the pecuniary legacies were made a charge upon the residuary estate, we think the decree of the circuit court must be affirmed. There is no proof as to the statute of limitations of the State of California referred to in the answer, and we are not advised as to what said statute is. In this State it has been held that a creditor has ample means, through administration, to enforce payment of his claim against an estate, and although there is no express statute of limitations of the time in which such a lien can be enforced, where there is an unexplained delay on the part of the creditor, the period of seven years from the death of the party is adopted, by analogy to the lien of judgments, as a bar to the enforcement of the lien. . . . This suit was not brought until seven years and eight months after the death of the testatrix. Such delay, unexplained, is a bar to the maintenance of the action." While this was a suit to recover interest upon a legacy, there is no material difference, in principle,

between such an action and an action to recover the principal of the legacy. The court in the *Shuld* case expressly applied the seven year statute of limitations and held that the suit was barred by laches.

In *Houck v. Herrick*, 179 Ill. App. 274, it appeared that the testatrix by the provisions of her will devised the fee to her farm to a niece, Lizzie G. Ryan, subject to the life estate of her husband, Benjamin D. Herrick, and bequeathed $200 each to six children of her brother, John Houck, and expressly charged the payment thereof on the real estate which she devised to her niece. In a proceeding brought by the children of John Houck to enforce the payment of these legacies, the court in reversing the decree of the circuit court which sustained a demurrer interposed by Lizzie D. Ryan, said: ''Appellees' legacies were expressly charged on the land in question, and Lizzie Grove Ryan taking the fee was expressly directed as owner of the fee to pay those legacies; she accepted the provision in her favor and by that act became personally liable to pay the legacies, but they still remained a charge upon the land and appellees have a right to enforce this charge in a court of equity similar to the right of a mortgagee to enforce his lien by foreclosure, if he chooses to do so, without resorting to the personal liability of the maker of the note secured by the mortgage, or of any other party who may have become personally liable to pay the mortgage debt. It is familiar law that equity has jurisdiction in enforcing liens resulting from charges on property by will or by deed. Pomeroy Equity Jurisprudence, secs. 1244–1248; 40 Cyc. 2051. The method of raising the legacy is by the sale of the property charged in analogy to proceedings for the foreclosure of a mortgage. 40 Cyc. 2051. The attachment of personal liability upon the devisee by reason of his acceptance of the devise does not affect the lien of the charge upon the land or bar a proceeding against the

land. 40 Cyc. 2056. Jurisdiction of courts of equity in such cases has been in this State long established. *Mahar v. O'Hara,* 9 Ill. 424; *Spangler v. Newman,* 239 Ill. 616. . . . Lizzie Grove Ryan being personally liable to pay these legacies is in the position of a party personally liable to pay a mortgage debt and appellees had the right to bring her into this suit as codefendant with Benjamin D. Herrick the owner of the land on which the lien was created by the will. *Scholten v. Barber,* 217 Ill. 148. If the amount of the legacies is not raised by the sale of the land, a decree for the deficiency could properly be entered against her, the court therefore erred in sustaining her demurrer to the bill.''

The question arising in the instant case did not arise in *Houck v. Herrick, supra,* but the opinion in that case did clearly define the rights and liabilities of the parties interested arising where a devise of land is accepted under the same state of facts as are under consideration here. In our opinion the provisions of the will of Coleman did not create the relationship of trustee and *cestui que trust* as between Fred W. Coleman and appellant but Fred W. Coleman held the land subject to the equitable interest therein of appellant. In the Restatement of the Law of Trusts as adopted and promulgated by the American Law Institute, vol. 1, sec. 10, pages 32 and 33, it is stated: ''An equitable charge is not a trust. In the case of an equitable charge, as in that of a trust, the person having title to property holds it subject to an equitable interest in another person. If an equitable charge is created, the equitable encumbrancer has an equitable lien upon the property, but the person who holds subject to the charge is the owner of the property, subject only to the lien; a trustee is not the owner of the trust property although he has title to it (see § 2, comment d). An equitable interest as well as a legal interest may be subject to an equitable charge, just as an equitable in-

terest as well as a legal interest may be held in trust. After the equitable charge is paid, the devisee can hold the property free and clear. On the other hand, where property is transferred upon a trust which is fully performed without exhausting the trust estate, the trustee holds the surplus upon a resulting trust for the settlor unless the settlor properly manifested a different intention (see § 430). b. Transfer to bona fide purchaser. A trust and an equitable charge are alike in that both the trustee and the holder of property subject to an equitable charge have the power to transfer the property free of the trust or equitable charge to a bona fide purchaser. Both the trustee and the holder of property subject to an equitable charge are liable in a proceeding in equity for selling the property to a bona fide purchaser, and thereby cutting off the equitable interest of the beneficiary or equitable encumbrancer. c. Fiduciary relation. There is a fiduciary relation between trustee and beneficiary but not between a holder of property subject to an equitable charge and the equitable encumbrancer. The holder of property subject to an equitable charge may properly transfer his interest in the property to a third person, provided that he makes the transfer subject to the charge or that he notifies the third person of the charge; it is a breach of trust for a trustee to transfer the trust property to a third person unless he is authorized to do so by the terms of the trust or by the court or under some circumstances by the beneficiaries (see § 171). . . . e. Statute of Limitations. The claim of an equitable encumbrancer against the holder of property subject to an equitable charge may be barred by a Statute of Limitations when the claim of a beneficiary against the trustee would not be so barred (see § 219). f. Manifestation of intention. Whether an equitable charge or a trust is created depends upon the manifestation of intention of the transferor. If the transferor manifests an intention to impose a duty upon the transferee to deal with

# mode

the page number.

the property for the benefit of a third person and to give to the third person the beneficial interest therein, a trust is created; if he manifests an intention not to impose such a duty upon the transferee, but to give to the transferee the beneficial interest therein, and to give a security interest to the third person, an equitable charge is created. Ordinarily where property is transferred to another 'subject to the payment of' a certain sum to a third person, or 'paying' such a sum, an equitable charge and not a trust is created, since the transferor does not thereby manifest an intention to impose a duty upon the transferee to deal with the property for the benefit of the third person. On the other hand, where property is transferred to another with a direction to pay to a third person a certain sum out of the property or its proceeds, or 'subject to the payment from the property or its proceeds,' or 'paying from the property or its proceeds' such sums, a trust and not an equitable charge is created, since the transferor thereby manifests an intention to impose a duty upon the transferee to deal with the property in part at least for the benefit of the third person. Illustrations: 4. A devises Blackacre to B 'subject to the payment of' debts of A or legacies. In the absence of evidence of a different intention, an equitable charge and not a trust is created. . . . g. If a transfer is made 'upon condition' and a condition is not thereby created (see § 11), it depends upon the manifestation of intention of the transferor whether a trust or an equitable charge is created. If the transferor manifests an intention to impose a duty upon the transferee to deal with the property for the benefit of a third person and to give the latter the beneficial interest therein, a trust is created; if he manifests an intention not to impose such a duty upon the transferee but merely to give the third person a security interest in the property, an equitable charge is created. Illustrations: 6. A devises Blackacre to B 'upon condition' that he pay certain debts of

A or legacies. In the absence of evidence of a different intention, an equitable charge and not a trust is created.''

The original complaint herein was filed on February 23, 1934, and as amended charges, and the motion to dismiss admits, that the life tenant died August 28, 1912, and that the final instalment of appellant's legacy should have been paid August 28, 1916. More than 17 years therefore elapsed before this suit was instituted. In 1932 Fred W. Coleman died. He had accepted the devise of the real estate as provided in his father's will, but failed to pay appellee her legacy as directed by the same instrument. The payment of this legacy was made a charge on the real estate which the father devised to his son Fred. Fred, under the provisions of his father's will, took a vested interest in this land. There are many expressions used by the courts of this and other States to the effect that a devisee of land so charged with the payment of money takes the land as a trustee. In our opinion, in the instant case, no direct, express trust in the true sense was created but rather an equitable lien or an implied trust to which statutes of limitation or laches apply. In Bogert on Trusts and Trustees, vol. 1, page 156 the author says: ''Frequently a testator charges land or personalty with the payment of legacies or debts. The devisee or legatee of the property affected is said to hold subject to a charge, and since the charge is primarily enforcible in chancery, it is often called an equitable charge. It is not uncommon to find courts and writers stating that such a charge is a trust and occasional holdings to that effect are found. Confusion also exists now and then from the opposite angle, and what is patently a trust is said to create a charge.''

In our opinion the decree appealed from is in harmony with the current trend of authority and should be affirmed.

*Decree affirmed.*